UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NET-COM SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> EUPEN CABLE USA, INC., et al., <br><br> Defendants. <br> ──────────────────────── <br> EUPEN CABLE USA, INC., <br><br> Counterclaimant, <br><br> v. <br><br> NET-COM SERVICES, INC., et al., <br><br> Counterdefendants. <br> ──────────────────────── | NO. CV 11-2553 JGB (SSx) <br><br><br><br> **MEMORANDUM AND ORDER REQUIRING** <br><br> **PLAINTIFF TO RESTORE AND PRODUCE** <br><br> **ELECTRONIC DATA** <br><br> **(Dkt. Nos. 128 & 210)** |

On July 26, 2013, Net-Com filed a Notice of Submission indicating that it had submitted hard drives containing potentially relevant financial data to a vendor for forensic analysis. (Dkt. No. 231). For the reasons stated below, Net-Com is ORDERED to produce any relevant data recovered from the hard drives within fourteen (14) days of the date of this Order and to bear the full cost of restoration and production.

**PRIOR PROCEEDINGS**

On November 14, 2012, the Court issued an Order granting in part Eupen USA's Motion to Compel Production of Documents. (See Dkt. No. 128). Among other documents, Eupen USA's Motion sought an Order requiring production of "Missing Accounting Information," including financial data believed to be stored on purportedly "dead" hard drives. (Id. at 14-15). In its Opposition to the Motion, Net-Com argued that the financial records Eupen USA sought "may no longer exist because they were on computers that are now dead. Net-Com's principals have been trying to access the dead hard drives, but so far with no luck." (Dkt. No. 117 at 5). The Court ordered Net-Com to produce the requested "Missing Accounting Information," with the exception of state and federal tax returns. (Dkt. No. 128 at 15-16). As part of that production, the Court also ordered Net-Com to produce "the computer hard drives containing potentially relevant ESI that Net-Com has been unable to restore" to allow Eupen USA "to test Net-Com's assertion that the information is inaccessible." (Id.).

On July 11, 2013, the Court granted in part and denied in part Eupen USA's Motion for Evidence Sanctions. (Dkt. No. 228). Eupen USA argued that Net-Com should be precluded from offering evidence of its damages because its production of financial data was incomplete and insufficient due to the loss of information "allegedly contained on a computer hard drive that was apparently no longer functional." (Dkt. No. 210 at 1-2). Net-Com argued in opposition that "there is no evidence that the hard drives have been 'irreparably damaged' such that their contents are irretrievable." (Dkt. No. 210 at 3). The Court

denied without prejudice Eupen USA's Motion for evidence preclusion. (Dkt. No. 228 at 9). However, consistent with its prior Order, the Court ordered Net-Com to submit the subject hard drives to a vendor for forensic analysis. (Id. at 10). The Order also required Net-Com to file a Notice of Submission indicating (1) the name of the vendor and date of submission, (2) whether any of the files on the hard drives are recoverable, and, if so, (3) the vendor's estimated cost of restoration and (4) the estimated length of time it would take to restore the data. (Id. at 10).

On July 25, 2013, Net-Com filed a Notice of Submission. (Dkt. No. 230). The Notice reported that Net-Com submitted the subject hard drives to Ai Networks (DBA DriveCrash.com) in Irvine, California on July 22, 2013. (Id. at 1). According to Net-Com, Ai Networks' preliminary assessment is that "there is recoverable data on at least one of the hard drives" and that the estimated cost to stabilize and recover the data was between $2,000 and $3,000. (Id. at 2). Ai Networks represented to Net-Com that it could complete the recovery within two to three weeks of being instructed to proceed. (Id.).

**BACKGROUND FACTS**

Net-Com instigated this litigation on February 8, 2011 in the Los Angeles County Superior Court. (Dkt. No. 1 at 2). The action was removed to this Court on March 25, 2011. (Id.). Steve Moffatt, one of Net-Com's principals, admitted in deposition that he was responsible for maintaining care, custody and control of Net-Com's documents, including its financial data. (Dkt. No. 210, Malingagio Decl., Exh. 13, at 49).

Moffatt testified that Net-Com stopped using its older accounting system, American Contractor, shortly after the company moved into "Avenue Penn." (Id. at 23). Although Moffatt could not recall the year the company moved to Avenue Penn or the last time he saw the hardware with the American Contractor data, he believed that it must have been "lost or stolen" because he could not find it when he later looked for it. (Id. at 32). However, Moffatt did not file a police report or an insurance claim regarding Net-Com's allegedly lost or stolen property. (Id. at 48).

For the last three years of its operation, from approximately September 2008 to September 2011, Net-Com operated out of an office in Moffatt's residence on Remington Road. (Id. at 36). Net-Com stopped doing business in October 2011. (Id. at 7). As the company was winding down, Moffatt rented out the home in September or October 2011. (Id. at 37). Before Moffatt moved out, he stored all of Net-Com's computer hardware and software systems that had accounting data in the garage of the Remington Road home. (Id. at 35 & 40). Moffatt instructed the renters not to throw anything out, but he failed to take any other precautions to preserve Net-Com's financial data. (Id. at 37).

When Moffatt drove by the home in September or October of 2011, he discovered that despite his instructions, the renters had put a "big pile of office equipment and everything else in the front yard, and they were being – they were thrown in dumpsters." (Id. at 38 & 60). The damaged hard drives that Moffatt later delivered to his attorneys were dug out of the renters' trash by an associate named "Pablo" on a different occasion sometime in September 2011. (Id. at 40 & 59).

Moffat admitted that the Timberline accounting system on the now non-functional hard drives was functional up to September 2011. (Id. at 33). A back up of the Timberline system existed, (id. at 34), but Moffatt assumes that the renters threw out the back-up drive along with Net-Com's other hardware. (Id. at 35 & 37).

## NET-COM IS RESPONSIBLE FOR ITS OWN NEGLIGENCE AND SHALL PAY THE FULL COST OF RESTORING AND PRODUCING ITS ELECTRONIC DATA

Spoliation is "the destruction or significant alteration of evidence, or <u>the failure to preserve property</u> for another's use as evidence[,] in pending or reasonably foreseeable litigation." <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212, 216 (S.D. N.Y. 2003) (emphasis added). The duty to preserve evidence is triggered when litigation is pending or reasonably foreseeable, at which time a party is required to preserve all relevant evidence and put into place a litigation hold to preserve relevant documents. Id. at 218; see also <u>World Courier v. Barone</u>, 2007 WL 1119196 at *1 (N.D. Cal. Apr. 16, 2007) ("'The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'") (quoting <u>Kronisch v. United States</u>, 150 F.3d 112, 126 (2d Cir. 1998)); <u>Zubulake</u>, 220 F.R.D. at 216 (obligation to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation").

\\

The authority to impose sanctions for spoliation arises from a court's inherent power to control the judicial process. <u>Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.</u>, 306 F.3d 806, 824 (9th Cir. 2002). The exercise of a court's inherent powers must be applied with "restraint and discretion" and only to the degree necessary to redress the abuse. <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Accordingly, the determination of an appropriate sanction for spoliation is "confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." <u>Fujitsu Ltd. v. Fed. Express Corp.</u>, 247 F.3d 423, 436 (2d Cir. 2001) (internal citations omitted). To decide which specific spoliation sanction to impose, courts generally consider three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." <u>Apple, Inc. v. Samsung Electronics Co., Ltd.</u>, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012) (internal quotation marks omitted).

Net-Com's duty to preserve evidence arose at the very latest by February 8, 2011, when it filed suit. In the Complaint, Net-Com alleged that due to Defendants' allegedly false representations, Net-Com lost "millions of dollars" which it sought to recover by this action. (Dkt. No. 1, Complaint, at 13). Net-Com's own complaint clearly placed Net-Com's finances at issue. Net-Com's financial and accounting data is highly relevant to both Net-Com's allegations and Eupen USA's defenses. Nonetheless, seven months <u>after</u> filing suit, Moffatt effectively abandoned the hardware and software containing Net-Com's financial

1 records by leaving the equipment and data in a garage in a house he
2 rented out to third parties. Even if the eventual loss and destruction
3 of evidence was not intentional, it was definitely negligent. The
4 negligent spoliation of evidence may still be sanctionable where it
5 results in prejudice to the opposing party because "each party should
6 bear the risk of its own negligence." Residential Funding Corp. v.
7 DeGeorge Fin'l Corp., 306 F.3d 99, 108 (2d Cir. 2002). As one court
8 explained,

> "It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss."

Id. (quoting Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 75 (S.D. N.Y. 1991)).

While it is not yet clear whether or to what degree Eupen USA has been prejudiced, the Court finds it appropriate for Net-Com, due to Net-Com's negligence, to bear the full cost of restoring and producing data on the hard drives submitted to Ai Networks. Accordingly, Net-Com is ORDERED to restore and produce any relevant data from the subject hard

drives within fourteen days of the date of this Order.[1]  Net-Com shall pay the full cost of restoration and production.

IT IS SO ORDERED.

DATED: August 5, 2013

                                        /S/
                                  SUZANNE H. SEGAL
                                  UNITED STATES MAGISTRATE JUDGE

---

[1] The Court sets this deadline based upon Net-Com's representations regarding the time needed for Ai Networks to restore the hard drives. If more time is needed, the parties may either stipulate or apply ex parte, with good cause, for a brief extension of the deadline.